# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**EGERALD EVERY**                                   **CIVIL ACTION**

**VERSUS**                                          **NO.  12-2390**

**BURL CAIN, WARDEN, LSP**                          **SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Egerald Every ("Every"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 27, 2008,[3] Every was charged by Bill of Information in Orleans Parish with one count of possession of marijuana with intent to distribute and one count of possession of more than 200 grams and less than 400 grams of cocaine.[4]  He entered a plea of not guilty to the charge on June 4, 2008.[5]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 3.

[3]Although the Bill is dated March 27, 2005, the crimes allegedly occurred on November 2, 2007, and the Bill was filed March 27, 2008.

[4]St. Rec. Vol. 1 of 5, Bill of Information, 3/27/08.

[5]St. Rec. Vol. 1 of 5, Minute Entry, 6/4/08.

The record reflects that, in October 2007, Every became the target of a narcotics investigation after a reliable confidential informant informed Detective Andrew Roccaforte of the New Orleans Police Department ("NOPD") that Every was selling cocaine from his apartment located at 3517½ Tulane Avenue.[6]  The informant also reported that Every stored the bulk of his cocaine at a storage facility on South Carrollton Avenue and made his deliveries using a black Mercedes with a Texas license plate.  Based on this information, the NOPD conducted a surveillance of Every's apartment.

The surveillance began on October 31, 2007.  Around 1:50 p.m. that day, the officers saw Every and Rochelle Mathew[7] exit the apartment and get into a black Mercedes with a Texas license plate.  Detective Roccaforte and several other officers in unmarked vehicles followed the car which was being driven by Every.  Every dropped Mathew off at a house on the corner of South Solomon and Iberville Streets.  He then proceeded to a storage facility located on South Carrollton Avenue. After entering the security gate that surrounded the storage facility, Every entered building number 1100, which contained a number of units.  After about five minutes, Every exited the facility and returned to the car.  He then drove to a motel/apartment complex in Jefferson Parish.  The NOPD detectives saw Every enter the parking lot and stop the car.  An unknown black male exited one of the rooms and approached the Mercedes.  The detectives then saw the unknown male hand Every some currency in exchange for a small object.  Every then left the motel parking lot and returned to his apartment on Tulane Avenue.  At that point, the surveillance was ended for the day.

---

[6]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Every*, 35 So.3d 410, 414-15 (La. App. 4th  Cir. 2010); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0721, pp. 2-5,3/24/10.

[7]This person is sometimes referred to as "Ronchelle Mathieu."

The next day, November 1, 2007, the detectives resumed the surveillance and then obtained a search warrant for Every's apartment.  On November 2, 2007, before executing the warrant, the detectives set up surveillance in front of the apartment.  At some point, Every exited the apartment with Mathew and they got into the Mercedes.  A take-down team, riding in a fully marked police vehicle, followed the Mercedes for a short distance before stopping it.  Sergeant Sandoz, who was a member of the take-down team, advised Every and Mathew that they were under investigation. He also advised them of their rights and brought them back to the apartment.  They were kept in the police vehicle while the search of the apartment was conducted.  Detective Rome retrieved apartment keys and $760 in cash from Every's person.

Using the keys confiscated from Every, Detective Roccaforte entered the apartment and, in a dresser drawer, found a clear plastic bag which held four plastic bags that contained a white powdery substance that appeared to be cocaine.  Also inside the drawer were two bags of a substance that appeared to be marijuana, a digital scale, sandwich bags, $2,000 in cash, a plate containing residue with a credit card on top, a birth certificate with Every's name, rental receipts for the apartment in Every's name, and a rental receipt for storage unit number 1129 at the South Carrollton storage facility in Mathew's name.

Based on these findings, Detective Roccaforte arrested Every, and advised him of his *Miranda* rights.  After indicating that he understood his rights and being questioned about the storage unit number 1129, Every admitted that he had about one quarter of a kilogram of cocaine stored at the storage facility.  Every also informed Detective Roccaforte that the keys to the storage unit were kept in the console of the Mercedes.  After obtaining a search warrant for the storage unit,

Detective Roccaforte used the keys he found in the console in the Mercedes to enter the storage facility.  There he recovered a black cloth bag containing 366.5 grams of cocaine.[8]

Although Mathew was the registered owner of the Mercedes and the lessee on the storage unit where the cocaine was found, the detectives did not see her do anything related to the drug activity.  As a result, she was not charged and was not subpoenaed for trial after she declined to testify on behalf of the defense.

Every was tried before a jury on October 23, 2008, and he was found guilty on count one of the lesser offense of possession of marijuana and guilty as charged on count two of possession of cocaine.[9]  At a hearing held on October 30, 2008, the state trial court sentenced Every to serve six months in the parish jail on count one, possession of marijuana, and to serve sixty (60) years in prison at hard labor on count two, possession of cocaine, to be served without benefit of parole, probation, or suspension of sentence.[10]  He was also fined $100,000.

That same day, based on the State's multiple offender bill filed as to count two, the Court found Every to be a third felony offender.[11]  The Court vacated the original sentence on count two and re-sentenced Every as a fourth offender to serve sixty (60) years at hard labor to run concurrently with the sentence for count one.[12]

---

[8]Every was not charged for possession of the cocaine found in his apartment.  Instead, the the cocaine charge was based solely on the 366.5 grams of cocaine found in the storage unit.

[9]St. Rec. Vol. 1 of 5, Trial Minutes, 10/23/08; Jury Verdict (count one), 10/23/08; Jury Verdict (count two), 10/23/08; St. Rec. Vol. 2 of 5, Trial Transcript, 10/23/08; Transcript of Verdict, 10/23/08.

[10]St. Rec. Vol. 1 of 5, Sentencing Minutes, 10/30/08; St. Rec. Vol. 2 of 5, Sentencing Transcript, 10/30/08.

[11]St. Rec. Vol. 1 of 5, Multiple Offender Sentencing Minutes, 10/30/08; Multiple Offender Hearing Minutes, 10/29/08; Multiple Bill, undated; St. Rec. Vol. 2 of 5, Multiple Bill Hearing Transcript, 10/29/08; Hearing Transcript, 10/30/08.

[12]St. Rec. Vol. 1 of 5, Multiple Offender Sentencing Minutes, 10/30/08.

On direct appeal, Every's counsel asserted the following errors addressing only the possession of cocaine conviction:[13] (1) the sentence imposed is excessive; (2) the sentence imposed is based on judicial vindictiveness; and (3) the non-unanimous verdict was unconstitutional.  On his own behalf, Every urged two additional errors:[14] (1) the evidence was insufficient to support the verdict of guilty to possession of cocaine; and (2) the Trial Court erred in admitting his statement regarding the presence of the cocaine in the storage unit since the State failed to prove he received and waived his *Miranda* rights.

The Louisiana Fourth Circuit affirmed Every's conviction finding no merit in the claims raised.[15]  The Court also amended his habitual offender sentence on count two to comply with the statute which did not prohibit probation or parole eligibility.

The Louisiana Supreme Court denied Every's related writ application without stated reasons on November 19, 2010.[16]  His conviction and sentence became final ninety (90) days later, on February 17, 2011, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Seven months later, on September 1, 2011, Every submitted an application for post-conviction relief to the Trial Court asserting that he received ineffective assistance of counsel when

---

[13]St. Rec. Vol. 2 of 5, Appeal Brief, 2009-KA-0721, 10/2/09.

[14]St. Rec. Vol. 2 of 5, *Pro Se* Supplemental Brief, 2009-KA-0721, 11/19/09.

[15]*Every*, 35 So.3d at 410; St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0721, 3/24/10.

[16]*State v. Every*, 49 So.3d 397 (La. 2011); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 2010-KO-0929, 11/19/10; La. S. Ct. Writ Application, 10-KO-929, 4/23/10 (postal metered 4/20/10, dated 4/18/10); St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2010-KO-929, 4/23/10 (showing postal meter 4/20/10).

counsel failed to challenge the validity of the search warrant.[17]  The Trial Court denied relief on September 15, 2011, finding that Every failed to meet the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[18]

The Louisiana Fourth Circuit and the Louisiana Supreme Court denied without stated reasons Every's related writ applications on October 18, 2011, and June 22, 2012, respectively.[19]

## II.  **Federal Petition**

On December 6, 2012, the clerk of this Court filed Every's federal petition for habeas corpus relief in which he raised the following grounds for relief:[20] (1) the sixty (60) year sentence received for possession of cocaine is excessive; (2) the sixty (60) year sentence received for possession of cocaine was based on judicial vindictiveness; (3) the non-unanimous verdict for possession of cocaine violated his constitutional rights; and (4) he received ineffective assistance of counsel when counsel failed to adequately challenge the validity of the search warrant.

The State filed a memorandum in opposition to Every's petition conceding that the petition was timely filed and that the claims were exhausted in the state courts.[21]  The State argues that the claims are without merit and that the petition should be dismissed with prejudice.

---

[17]St. Rec. Vol. 4 of 5, Uniform Application for Post-Conviction Relief, dated 9/1/11.

[18]St. Rec. Vol. 4 of 5, Trial Court Judgment, 9/15/11.

[19]*State ex rel. Every v. State*, 90 So.3d 456 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KH-2515, 6/22/12; La. S. Ct. Writ Application, 11-KH-2515, 11/14/11 (postmarked 11/9/11, dated 11/7/11); St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2011-KH-2515, 11/14/11; St. Rec. Vol. 4 of 5, 4th Cir. Order, 2011-KA-1411, 10/18/11; 4th Cir. Writ Application, 2011-KA-1411, 10/10/11.

[20]Rec. Doc. No. 3.  Every erroneously counts the standard for ineffective assistance of counsel as a separate issue.  As determined by the State, he has only presented four substantive issues in spite of his erroneous numbering.

[21]Rec. Doc. Nos. 15.

III.   **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this court under the federal mailbox rule on September 26, 2012.[23]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record confirms that Every's petition is timely filed and the claims are exhausted.  The record does not reflect that any of the claims are in procedural default. Therefore, the Court will address the substance of Every's claims.

---

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Every's federal habeas petition on December 6, 2012, when the filing fee was received after Every was notified by the Clerk that he was required to pay the filing fee or apply for pauper status. Every dated his signature on the petition on September 26, 2012, the day before the Clerk first received the petition in the mail. Rec. Doc. No. 3, p.1 (tendered for filing 9/27/12).  This is the earliest date appearing in the record on which Every could have presented the pleadings to prison officials for mailing to a court.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

**IV.**    <u>**Standards of Review of the Merits**</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.   Excessive and Vindictive Habitual Offender Sentence (Claim Nos. 1 and 2)[24]

---

[24]Every's supporting brief is a replication of that filed by his counsel on direct appeal to the Louisiana Fourth Circuit. The brief therefore discusses whether his claim was properly preserved for direct appeal. Rec. Doc. No. 3, p. 27. As shown in the foregoing procedural history, his claim was resolved on the merits by the Louisiana Fourth Circuit finding that the Trial Court *sua sponte* preserved the claim on Every's behalf. Every offered in the alternative that, if he was not allowed to raise the claim, he intended to urge a claim of ineffective assistance of counsel for failure to preserve the issue. Since the issue was preserved and considered on the merits by the Louisiana Fourth Circuit, he apparently does not urge the latter claim. Even if he did, the claim is meritless under the *Strickland* standards later addressed in this report, because Every could not show a deficient performance for failure to preserve a meritless claim nor show that he was prejudiced by counsel's failure since the claim was in fact considered on appeal.

Every argues that the habitual offender sentence imposed by the Trial Court is excessive because it was the maximum sentence without a showing that Every was an egregious violator or that this was a severe offense.  He also contends that the maximum sentence was imposed by the Trial Court with vindictive motive because Every was "arrogant" in declining the plea agreement offered by the State which called for a 10-year prison sentence.  He argues that the state trial judge imposed the maximum sentence to punish Every for exercising his right to go to trial.

The State argues that Every's claim is without merit because the sentence is not excessive for a habitual offender and the length of the sentence is not sufficient to prove vindictiveness of a judge or prosecutor.

Every's appointed counsel raised this claim on direct appeal and the Louisiana Fourth Circuit denied relief finding the claim to be meritless.  This was the last reasoned opinion on the issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court on habeas review will presume that the state courts relied on the same grounds as the last reasoned opinion).

On federal habeas review, claims of excessive sentence and other constitutional challenges to a sentence present a question of law.  *United States v. Smith*, 27 F. App'x 361, 368-69 (6th Cir. 2001) (constitutional challenges); *Davis v. Cain*, 44 F. Supp.2d 792, 798 (E.D. La.1999) (excessive sentence); *Jones v. Kaylo*, No. 99–0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999) (Berrigan, J.) ("The question of excessive sentence is purely a question of law. . .."); *see also*, *Copeland v. Tanner*, No. 12-2801, 2013 WL 3776344, at *12 (E.D. La. July 15, 2013) (Milazzo, J.) (Order adopting report and recommendation); *Chatman v. Miller*, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005) (McNamara, J.) (Order adopting report and recommendation). The Court

must therefore determine whether the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, federal law.

### A.    <u>The Sentence is Not Excessive</u>

Every contends that his sentence was excessive because he received the maximum prison term.  Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  As here, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses."  *McGruder*, 954 F.2d at 316.

Every was convicted of possession of more than 200 grams and less than 400 grams of cocaine in violation of La. Rev. Stat. Ann. § 40:967(C).  A violation of that provision called for a sentence for "a term of imprisonment at hard labor of not less than ten years, nor more than thirty years, and to pay a fine of not less than one hundred thousand dollars, nor more than three hundred

fifty thousand dollars." La. Rev. Stat. Ann. § 40:967(F)(1)(b). At the time of his crime and conviction, the Louisiana's Habitual Offender Law, specifically La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(i), provided that when a third or subsequent conviction exposed the offender to imprisonment for any term less than his natural life, he would be sentenced to imprisonment for the third or subsequent felony for a determinate term to be "not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction." Read together, Every was facing a prison term as a third felony offender of not less than twenty (20) years nor more than sixty (60) years in prison at hard labor, in addition to the fine and the probation and suspension restrictions.

On this charge as a multiple offender, Every received a sentence of sixty (60) years in prison at hard labor without benefit of probation or suspension of sentence and a $100,000 fine. This sentence was within the range of allowable sentences for a third felony offender like Every, and which was based in part on the seriousness of his prior crimes and his propensity for criminal behavior. This behavior included his prior convictions for possession of large amounts of cocaine, his arrest on drug charges while out on bond on these charges and after failing to appear in court on two occasions on these charges.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 528 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005). As noted above, that disproportionality

is judged by whether similar sentences have been imposed for the same offense.  *Smallwood*, 73 F.3d at 1346-47.

As noted by the state courts, Louisiana courts regularly imposed the maximum prison term to third offenders and even those at a second offense level.  *State v. Brock*, 91 So.3d 1003 (La. App. 2d Cir. 2012) (Sixty year sentence without benefit of probation or suspension of sentence for possession of 28 to 200 grams of cocaine for second felony offender); *State v. Robinson*, 87 So.3d 881 (La. App. 5th Cir. 2011) (Sixty year sentence for possession of 200 to 400 grams of cocaine for fourth felony offender); *State v. Montgomery*, 31 So.3d 560 (La. App. 2d Cir. 2010) (Fifty-five year sentence for possession of 28 to 200 grams of cocaine for second offender).

Nothing Every has argued distinguishes his situation as an exception to the cases cited above in which similar sentences were imposed for similar sets of crimes.  As noted by the state courts, his criminal record does not reflect that he is unlikely to commit more crimes.  The facts surrounding his possession of cocaine charge also demonstrated his continued involvement in the serious business of illicit drugs.  The imposition of a maximum sentence and minimum fine upon Every as a third offender was not so extreme that it violated the Eighth or Fourteenth Amendments.

For the reasons discussed above, the state courts' finding that Every's sentence was not excessive was neither contrary to or an unreasonable application of, established Supreme Court law. This claim is without merit.

### B.    The Sentence was not Vindictive

Every contends that the state trial court, acting with vindictive motive, violated his constitutional rights by imposing a sentence greater than that offered to him in a pretrial plea

bargain.  He basis his suggestion of vindictiveness on the Trial Court's comments at sentencing noting that he rejected the plea bargain and the Judge's reference to his arrogance.

The Supreme Court has held "whenever a judge imposes a more severe sentence upon a defendant <u>after a new trial</u>, the reasons for him doing so must affirmatively appear . . .. Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose." (emphasis added, quotation marks omitted)) *Alabama v. Smith*, 490 U.S. 794, 798-99 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 723 (1969), *overruled on other grounds by*, *Smith*, 490 U.S. at 794; *see*, *Texas v. McCullough*, 475 U.S. 134, 142-43 (1986) (higher sentence imposed following retrial after appeal and remand did not raise presumption of vindictiveness).  This presumption "is a prophylactic rule designed to protect a defendant's due process rights where a danger exists that the government might retaliate against him for exercising a legal right."  *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008).  The rule applies, however, "only where there exists a 'reasonable likelihood that the increased sentence is the product of actual vindictiveness' and 'where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.'" *United States v. Reinhart*, 442 F.3d 857, 860 (5th Cir. 2006) (quoting *Smith*, 490 U.S. at 794).

Although the Supreme Court has addressed the issues of vindictive sentencing after a second or retrial, it has not addressed the matter on facts like those presented here, where the sentence is only in conflict with that offered by a pretrial plea agreement.  While the cases considered by the Supreme Court are factually distinguishable, the Supreme Court has declined to impose the presumption of vindictiveness based simply on the fact that a higher sentence was imposed after trial than was imposed after a prior guilty plea.

14

In *Smith*, 490 U.S. at 794, for example, the Supreme Court declined to apply the presumption of vindictiveness where the defendant appealed his guilty plea, the matter was remanded for trial, and the trial court imposed a longer sentence than was originally imposed after the vacated guilty plea.  The Supreme Court concluded that "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to vindictiveness on the part of the sentencing judge."  *Id*., at 801.

In a different circumstance, Every alleges that the Trial Court's imposition of a harsher sentence after trial as punishment for rejecting the plea offer and exercising his right to stand trial.[25] The Fifth Circuit, however, has determined that the presumption of vindictiveness addressed in *Smith* and *Pearce* is "completely inapplicable to post-plea bargain proceedings."  *Frank v. Blackburn*, 646 F.2d 873, 885 (5th Cir.1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).  In these situations, a defendant must demonstrate that there was a reasonable likelihood that the increase in his sentence was due to actual vindictiveness.  *See United States v. Rodriguez*, 602 F.3d 346, 359 (5th Cir. 2010).

In this case, Every rejected the state's offer to enter a guilty plea in return for a ten (10) year sentence and instead chose to contest his guilt by taking his chances at trial.  Once the plea deal was rejected, however,

> the defendant cannot complain that the denial of the rejected offer constitutes a
> punishment or is evidence of judicial vindictiveness. To accept such an argument is
> to ignore completely the underlying philosophy and purposes of the plea bargaining
> system. If a defendant can successfully demand the same leniency after standing trial

---

[25]Every also references Supreme Court case law that prohibits trial courts from punishing a person for "doing what the law allows him to do." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  The *Bordenkircher* decision, however, also instructs that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id*.  Here, Every was offered a lesser sentence in return for his plea and he rejected that offer.

that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

*Frank*, 646 F.2d at 883.

Thus, the mere imposition of a harsher sentence after trial than was offered during the pretrial plea negotiations does not warrant a presumption that the trial judge sought to punish Every for exercising his right to stand trial absent some other indicia of actual vindictiveness.

Furthermore, the imposition of an increased sentence after trial is often warranted by the presentation of evidence at trial that was not previously available or known to the court during the plea negotiations. *See*, *e.g.*, *Smith*, 490 U.S. at 796-97 ("The trial court explained that it was imposing a harsher sentence than it had imposed following respondent's guilty plea because the evidence presented at trial, of which it had been unaware at the time it imposed sentence on the guilty plea, convinced it that the original sentence had been too lenient."). At Every's sentencing as a habitual offender, the trial judge recalled the overwhelming evidence of guilt and the impact Every's career in drug crimes had on redevelopment of his neighborhood. The judge also commented on Every's arrogance as reference to his flagrant disregard for the severity of his current and prior criminal activity, a valid point to be considered in the habitual offender sentencing.

The trial judge through his comments at the sentencing made clear his resolve that the evidence presented at trial and in the multiple offender proceeding shed light on Every's character and the seriousness of his criminal activity. The imposition of an increased sentence after trial and upon a multiple offender bill was justifiable considering the leniency inherent in the plea negotiation process which is not available to a defendant once a trial has been held. *See Smith*, 490 U.S. at 802-03 (recognizing that "the same mutual interests that support the practice of plea bargaining to avoid

trial may also be pursued directly by providing for a more lenient sentence if the defendant pleads guilty"); *Frank*, 646 F.2d at 883.

In rejecting the plea offer, Every assumed the risk of a conviction and ultimately, a harsher sentence, especially as a third and potentially fourth felony offender.  The trial judge's statements acknowledge this reality and did not demonstrate that Every was being punished solely for his decision to stand trial.

In addition, even if Every's claims present some indicia of vindictiveness, it is rebutted by the showing that the trial court based the sentence on these "objective reason or reasons" which came to light at trial and after he declined to enter the guilty plea.  *See United States v. Resendez-Mendez*, 251 F.3d 514, 518 (5th Cir. 2001); *Pearce*, 395 U.S. at 723 (objective reasons can include "events . . . that may have thrown new light upon the defendant's life, health, habits, conduct, and mental and moral propensities.")  The objective evidence justified the trial court's decision and was sufficient to rebut any suspected vindictiveness.

Thus, the Trial Court's comments were more than sufficient to establish that the Louisiana courts did not act contrary to, or unreasonably apply, Supreme Court precedent in determining that Every's sentence was based on factors other than the trial judge's alleged vindictiveness.  Every is not entitled to relief on this claim.

## VI.    Constitutionality of the Non-Unanimous Verdict (Claim No. 3)[26]

---

[26]As with the prior issue, Every argues the preservation of this claim for direct appeal.  Rec. Doc. No. 3, p. 36. This claim was entertained on the merits by the Louisiana Fourth Circuit.  Every again argues in the alternative that, if he was not allowed to appeal, he intended to raise a claim of ineffective assistance of counsel for failure to preserve the issue for appeal.  Since the issue was preserved and was resolved on the merits by the Louisiana Fourth Circuit, he apparently does not urge the latter claim.  The claim is nevertheless meritless under the *Strickland* standards later addressed in this report, because Every could not show a deficient performance for failure to preserve a meritless claim nor show that he was prejudiced by counsel's failure since the claim was in fact considered on appeal.

17

Every argues that La. Code Crim. P. art. 782(A) is unconstitutional where it allows conviction by a non-unanimous jury verdict in non-capital criminal cases like his.  The State argues that the non-unanimous verdict is not unconstitutional and the claim is without merit.

Every's appointed counsel raised this claim on direct appeal and the Louisiana Fourth Circuit denied relief finding the claim to be meritless.  This was the last reasoned opinion on the issue.  *See Ylst*, 501 U.S. at 802.

Every here challenges the constitutionality of Louisiana law that permits conviction in felony cases based upon non-unanimous jury verdict where capital punishment will not be imposed.  *See*, La. Const. Art. 1, § 17; La. Code Crim. P. art. 782(A).  This kind of challenge to the constitutionality of state law presents a pure question of law.  *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).  Thus, Every may obtain federal habeas corpus relief as to this kind of claim only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

The record in this case does not indicate that the jury was polled or that a specific count of the votes was placed on the record.  In addressing Every's claim on direct appeal, the Court assumed based on counsel's representation, which was not challenged by the State, that the verdict was a 10 to 2 vote on the cocaine offense, which was the only conviction challenged in the appeal.[27]  Assuming a non-unanimous vote occurred, as the state appellate court did, Every can not meet this burden in light of the clearly established United States Supreme Court precedent which is directly contrary to his argument.

---

[27]*Every*, 35 So.3d at 420, n.10; St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2009-KA-0721, p. 13, n.10, 3/24/10.

In its early consideration of this same argument, the United States Supreme Court upheld the constitutionality of state laws, including Louisiana's, which permitted criminal defendants to be convicted by less than unanimous jury votes. *Apodaca v. Oregon*, 406 U.S. 404 (1972); *Johnson v. Louisiana*, 406 U.S. 356 (1972).  While the Supreme Court itself has recently described the *Apodaca/Johnson* holding as "the result of an unusual division among the Justices," it also made clear that *Apodaca/Johnson* remains the law of the land:

> The [Supreme] Court has held that although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials.

*McDonald v. City of Chicago*, __ U.S. __, 130 S. Ct. 3020, 3035 n.14 (2010).

On habeas corpus review, the Fifth Circuit also has recognized that a prisoner's constitutional challenge to a conviction by a non-unanimous jury must be rejected under *Apodaca/Johnson*:

> We first note that we cannot find, as petitioner would like, that the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court "has not held that the Constitution imposes a jury unanimity requirement."

*Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999) (quoting *Richardson v. United States*, 526 U.S. 813, 821 (1999)).

In fact, Every recognizes in his pleadings that the clearly established precedent in and following *Apodaca* and *Johnson* is contrary to his position.  Further, his arguments merely urge a change in the law and do not demonstrate a ruling contrary to or an unreasonable application of clearly established Supreme Court precedent as it now exists.  Every simply attempts to persuade this court that there are reasons why the Supreme Court's holdings in *Apodaca* and *Johnson* should not be followed or should be changed.

On federal habeas corpus review, however, it is not the function of this court to apply its own judgment of what the law ought to be or might be in the future. Instead, the standard is whether the state courts' decisions to uphold Every's conviction based on a non-unanimous jury verdict was contrary to, or involved an unreasonable application of clearly established United States Supreme Court precedent. Under the *Apodaca/Johnson* doctrine and its progeny, the state courts' denial of relief on this issue was neither; instead, the denial of relief was absolutely consistent with Supreme Court precedent. Every is not entitled to relief on this claim.

**VII.   Effective Assistance of Counsel (Claim No. 4)**

Every contends that his trial counsel provided ineffective assistance when he failed to challenge the validity of the search warrant where the affidavit in support did not establish probable cause. The State argues that Every can not meet the standards set forth in *Strickland* because his trial counsel did challenge the search warrant and seek to suppress the evidence.

Every raised this issue on post-conviction review and the Trial Court denied relief relying on the standards set forth in *Strickland*. This was the last reasoned decision on the issue. *Ylst*, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, applied by the Louisiana courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the

petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v.*

*Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."

*Harrington*, 131 S. Ct. at 788.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

In the instant case, Every has failed to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case.  His claim is premised on his trial counsel's failure to achieve success on the motion to suppress the evidence seized with the search warrant.  He argues that counsel should have taken a different approach, emphasizing the missing information from the warrant's affidavit, in arguing the motion to the state trial court.  However, counsel's actions are not deficient, or prejudicial, simply because counsel was unsuccessful in his efforts to obtain relief from a court.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Furthermore, although the resolve of the probable cause/motion to suppress hearing was not favorable to Every, the record demonstrates that his counsel proceeded in a professional and knowledgeable manner during the hearings.  Contrary to Every's suggestion, counsel specifically questioned Detective Roccaforte about the fact that the confidential informant had given him a nickname that he failed to include in the affidavit for the warrant and failed to include in the police report he wrote.[28]  Counsel also obtained testimony that the informant also had not directly purchased drugs from or interacted with Every.[29]  His dealings were through an intermediary and his description was that of the seller being a middle-age black male known as "Black."  The informant was also paid for this non-descript information given to the Detective.[30]  Counsel's questioning also prompted the Trial Court to question the Detective to clarify some of the details from his testimony on direct examination to reconcile the information elicited by counsel on cross-examination.[31]

In spite of counsel's efforts to challenge the basis for the warrant and the arrest, Every contends that perhaps he should have been more aggressive in his reiteration to the Court of the insufficiencies in the affidavit and warrant.  The record confirms that the Trial Court was keeping accurate notes and was involved in the hearing in a sufficient manner to have justified its ruling without need for counsel to further argue the evidentiary points made at the hearing.  The Trial Court made a clear finding that probable cause existed for the warrant, the arrest, and the charges.[32]  It was

---

[28]St. Rec. Vol. 2 of 5, Hearing Transcript, pp. 2-4, 8/21/08.

[29]*Id.*, p. 4.

[30]*Id.*, p. 7.

[31]*See*, *e.g.*, *Id.*, pp. 6, 7, 15.

[32]*Id.*, pp. 20-21.

reasonable for counsel not to further pursue the matter with the Trial Court and to instead leave it for appeal.  The Court also emphasizes that the issue was reserved for appeal at the end of the hearing, which allowed Every's appellate counsel to further challenge the ruling on direct appeal.

Nevertheless, in spite of counsel's efforts, the state courts' found no reason to grant the motion to suppress or to invalidate the warrant.  Counsel's unsuccessful efforts on these issues does not equate to deficient or prejudicial performance.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

## VIII.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Egerald Every's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[33]

New Orleans, Louisiana, this 4th day of April, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[33]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.